UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| SUSAN L. PURUCKER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:18-CV-330-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Susan L. Purucker ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 14. Plaintiff also filed a reply brief. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED.**

## BACKGROUND

On January 20, 2010, Plaintiff filed an application for SSI under Title XVI of the Act, alleging disability beginning March 1, 2002 (the disability onset date), based on: fibromyalgia, migraines, low blood pressure, bipolar disorder, and anxiety. Transcript (Tr.) 139-42, 151, 167, 512. The application was initially denied on April 19, 2010, after which Plaintiff requested an administrative hearing. Tr. 72-84, 91-93. Administrative Law Judge David Shaw ("ALJ Shaw")

presided over a video hearing from Baltimore, Maryland, on June 8, 2011.  Tr. 26. Plaintiff appeared and testified from Buffalo, New York, and was represented by Joseph D. Clark, an attorney. *Id*. William H. Reid, Ph.D., an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on June 14, 2011, finding that Plaintiff was not disabled. Tr. 26-35. On February 12, 2013, the Appeals Council denied Plaintiff's request for further review (Tr. 1-6), after which Plaintiff filed a Complaint in this Court seeking review of the ALJ's decision (Tr. 623). On October 26, 2015, the Court remanded the ALJ's decision for further administrative proceedings (Tr. 576-610, 626-27).

A new hearing was held on September 6, 2017, in Buffalo, New York, before Administrative Law Judge Lynette Gohr ("ALJ Gohr"). Tr. 510. Plaintiff appeared and testified at the hearing and was represented by Kelly Laga, an attorney. *Id*. VE Tania Shullo appeared and testified via telephone. Tr. 510, 535-572. As ALJ Gohr noted that, at the first hearing, Plaintiff amended her alleged onset date to January 20, 2010. Tr. 510 (citing Tr. 45). ALJ Gohr (hereinafter, referred to as the "ALJ") issued an unfavorable decision on December 18, 2017, finding Plaintiff not disabled. Tr. 510-528. The Appeals Council declined further review (Tr. 509), and the ALJ's December 18, 2017 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112t (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or

mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 18, 2017 decision:

1. The claimant has not engaged in substantial gainful activity since January 20,2010, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: migraines, fibromyalgia-polyarthralgia, bipolar disorder, major depressive disorder and generalized anxiety disorder (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)[1] except can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch and crawl; never balance; no work at unprotected heights or  around dangerous machinery; avoid concentrated  exposure to

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

noise levels that are greater than moderate as defined by the Dictionary of Occupational Titles ("DOT"); avoid concentrated exposure to extreme heat, extreme cold, wetness and humidity; should avoid working with bright lights or flickering lights such as would be experienced in welding or cutting metals and no driving as part of job duties. In addition, limited to simple routine tasks; limited to simple work-related decisions; minimal changes in work routines and processes and occasional interaction with the public.

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on January 25,1971 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 20,2010, the date the application was filed (20 CFR 416.920(g)).

Tr. 510-28.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on January 20, 2010, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 528.

## ANALYSIS

Plaintiff asserts two points of error. In her first point, Plaintiff argues that the ALJ erred in evaluating the medical opinions in assessing Plantiff's mental RFC. *See* ECF No. 9-1 at 12-17. Plaintiff particularly takes issue with the ALJ's assessment of the opinion of state agency psychiatric examiner Renee Baskin, Ph.D. ("Dr. Baskin"). *Id*. In her second point, Plaintiff argues that the ALJ was required to develop the record with an additional medical opinion in assessing her physical RFC. *Id*. The Commissioner responds that: (1) the ALJ properly considered Dr.

Baskin's opinion in assessing Plaintiff's mental RFC; and (2) ALJ properly assessed the physical limitations of Plaintiff's RFC. *See* ECF No. 14-1 at 18-27.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record in this case, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, and assessed mental and physical limitations supported by the record as a whole.

On February 10, 2010, the month after she filed her application for benefits, Plaintiff saw Nicolas Saikali, M.D. ("Dr. Saikali"), and Laszlo Mechtler, M.D. ("Dr. Mechtler"), at the Dent Headache Center, for a migraine evaluation. Tr. 199-200. Plaintiff reported that the frequency of her headaches had slightly decreased, and they were responding well to Treximet; however, she complained of worsening fibromyalgia. Tr. 199. Upon examination, Plaintiff had "significant trigger points throughout," but normal gait, coordination, and sensation, and no cranial nerve deficits. Tr. 199. Drs. Saikali and Mechtler assessed migraine headaches without aura, chronic sleep disturbance, cervical myofascial pain syndrome with associated trigger points, and fibromyalgia. Tr. 200. They prescribed Savella and recommended an overnight sleep study. *Id*.

When Plaintiff returned to Drs. Saikali and Mechtler on February 24, 2010, she had not obtained the recommended sleep study. Tr. 201-02. She reported that her headaches continued to improve, and she had no complaints regarding headaches. Tr. 201. Plaintiff's "biggest complaints" at that visit were generalized pain due to worsening fibromyalgia and suffering from mood swings

and palpitations after starting Savella. *Id*. She also stated that she was facing stress at home which contributed to her headaches and fibromyalgia. *Id*. Upon examination, Plaintiff was alert, oriented, and in no acute distress, and her gait, strength, sensation, and coordination were normal. *Id*. Drs. Saikali and Mechtler replaced Plaintiff's Savella with Lortab and stated that her headaches were under control. Tr. 202.

On March 3, 2010, Plaintiff saw Danilo Saldaña, M.D. ("Dr. Saldaña"), for a rheumatology exam. Tr. 287-88. Although she had tender points across several sites of her body, Plaintiff had full range of motion in her shoulders and was free of any extremity, neurologic, or joint abnormality. Tr. 288. Dr. Saldaña assessed polyarthralgia, low back pain, fatigue, migraine headache, and history of bipolar disorder; prescribed Lortab and Baclofen; recommended blood testing and a pain management evaluation; and told Plaintiff to use heat, stretching, and a hard mattress. Tr. 288. Plaintiff returned to Dr. Saldaña on August 4, 2010 and October 13, 2010, complaining of pain, fatigue, and migraines. Tr. 774-75, 776-77. Plaintiff's physical exam findings were essentially unchanged, and Dr. Saldaña advised her to see a pain specialist. Tr. 775, 777.

On April 1, 2010, Plaintiff saw state agency consultative examiner Donna Miller, D.O. ("Dr. Miller"), for an internal medicine exam. Tr. 357-62. Plaintiff reported that she had back pain from falling down some stairs in 2002, and she had been experiencing migraines and fibromyalgia since 2003. Tr. 357. However, she stated that Treximet and Lortab helped alleviate her migraines and fibromyalgia, and injections had helped her back pain. *Id*. According to Plaintiff's report, an MRI of her head in September 2009 was normal. *Id*. Dr. Miller also noted that Plaintiff lived with her 16-year-old twins and 12-year-old son, and could cook, shop, do laundry, and perform childcare. Tr. 358.

Upon examination, Plaintiff's gait was normal; she was able to rise from a chair without difficulty, despite declining to fully squat; she used no assistive devices to walk, even though she declined to walk on her heels and toes; and she needed no help getting on or off the exam table. Tr. 359. She also had equal reflexes; intact hand and finger dexterity; full range of motion in her cervical spine, shoulders, elbows, wrists, hips, knees, and ankles; and negative straight leg raise testing despite limited range of motion in her lumbar spine. Tr. 359-60. Dr. Miller also noted that Plaintiff had no tender points (Tr. 360), and an x-ray of Plaintiff's lumbosacral spine showed "no acute bony abnormality" (Tr. 360, 362). Dr. Miller assessed fibromyalgia, chronic low back pain, migraine headaches, and obesity, and opined that Plaintiff had no significant limitations. Tr. 360.

Plaintiff also saw consultative examiner Dr. Baskin for a psychiatric exam on April 1, 2010. Tr. 363-66. Plaintiff complained of depression and anxiety and said that she had been unable to work since falling down some stairs. Tr. 364. Plaintiff was euthymic, cooperative, and neatly groomed, despite appearing tense and seeming to need to reposition due to pain. Tr. 364-65.  She also related adequately; made appropriate eye contact; had goal-directed thought processes; and she was able to count, perform serial threes, make simple calculations, and remember three out of three objects immediately and after five minutes. Tr. 365.

Dr. Baskin assessed an adjustment disorder with mixed anxiety and depressed mood; pain disorder; and fibromyalgia, migraine headaches. Tr. 366. Dr. Baskin stated that Plaintiff may have medical problems that interfered with her ability to maintain a regular schedule, but she had minimal to no limitation learning new tasks, performing complex tasks, maintaining attention and concentration, performing simple tasks independently, making appropriate decisions, relating adequately with others, and following and understanding simple directions and instructions. Tr.

366. She also stated that Plaintiff's examination results "appear to be consistent with stress related and psychiatric problems [which] may interfere with [her] ability to function on a daily basis." *Id.*

On July 13, 2010, Dr. Mechtler completed a physical RFC questionnaire. Tr. 369-70. He circled items on the form indicating that Plaintiff could sit for an hour at a time, stand and walk for a half hour at a time, lift and carry five pounds, and bend, squat, and reach occasionally. Tr. 369. He also indicated that she could use arm controls and do fine manipulation, but could not grasp, bend, climb, or operate leg controls, and had a moderate restriction to dust, fumes, and gases. *Id.* He further indicated that she would need to lie down three hours during the day, would miss four or more days of work a month, and was "disabled from full time competitive employment five days per week, eight hours per day on a sustained basis." Tr. 370.

On May 16, 2011, Dr. Saikali completed a headache questionnaire. Tr. 490-95. He said that Plaintiff experienced headaches triggered by noise, stress, weather changes, and lack of sleep, and that her headaches were worsened by noise and bright lights. Tr. 491. He also wrote that Plaintiff needed to take medication and lie in a dark room to relieve her headaches; she would miss work about four times a month; and she would need breaks, although he did not know the frequency. Tr. 493. Dr. Saikali opined that Plaintiff was precluded from even basic work activities when experiencing a headache. Tr. 492-94.

From April 19, 2012, to April 27, 2012, Plaintiff received inpatient treatment at BryLin Hospitals ("BryLin"). Tr. 742-54. She reported having "severe depression" and "feeling hopeless and helpless." Tr. 742. At the time of her admission, Plaintiff admitted she had been using marijuana and alcohol occasionally. *Id.* Plaintiff was well-nourished; her eye contact was fair; her speech was coherent, although low; her cognition was intact; her concentration was limited; and she had psychomotor retardation. Tr. 743. She was assessed with bipolar disorder by history and

major depressive disorder and assigned a global assessment of functioning ("GAF") score of 30.[2] Tr. 742. By April 27, 2012, she had responded well to adjustments in her medication, had brighter affect, and denied any depression or anxiety. Tr. 744. She was given a GAF of 55[3] and discharged. *Id*.

On March 19, 2013, Plaintiff saw Cheryl Mills, L.C.S.W. ("Ms. Mills"), at Dale Associates ("Dale"), complaining of depression and anxiety. Tr. 1022-26. Plaintiff was attentive and focused, could follow the conversation, and had fair concentration despite poor insight and judgment. Tr. 1022-23. Ms. Mills concluded that Plaintiff was experiencing increased depression due to family and relationship issues and her dog running away. Tr. 1025. She indicated a GAF score of 50 and recommended counseling. Tr. 1026. On August 9, 2017, a nurse practitioner at Dale observed that Plaintiff was cooperative; made appropriate eye contact; had linear and coherent thought processes; and had good insight and judgment. Tr. 1030. Plaintiff also said that she was stable on her medication. *Id*.

In weighing the medical evidence to assess Plaintiff's RFC, the ALJ gave "little weight" to the opinions of Dr. Sakali, Dr. Mechtler, Dr. Miller, and Dr. Andrews; and significant weight to the opinion of Dr. Baskin. Tr. 525-526. Plaintiff first complains that the ALJ erred in affording Dr. Baskin's opinion significant weight because her opinion was stale. *See* ECF No. 9-1 at 14. Specifically, Plaintiff claims that because Dr. Baskin provided her opinion in 2010, her opinion

---

[2] The GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information." *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018) GAF scores are designed to consider factors outside those used in disability determinations. The Social Security Administration has limited the manner in which GAF scores are used because they are generally not useful without additional supporting description and detail. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (internal citations omitted). A GAF score of 21 to 30 represents behavior considerably influenced by delusions or hallucinations, serious impairment in communication or judgment, or inability to function in almost all areas. *See* Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV").
[3] GAF of 51 to 60 represents moderate symptoms, or moderate difficulty in social, occupational, or school functioning. *See* DSM-IV at 34.

was inconsistent with later evidence from Plaintiff's April 2012 psychiatric hospitalization, her continuing treatment at Dale, and the medical evidence from just before her September 2017 hearing showing that Plaintiff was taking psychotropic medication. *See id*. Plaintiff also claims that the ALJ improperly considered Dr. Baskin's Social Security disability program knowledge because a case from 2016 concluded that such knowledge was irrelevant to the weight afforded to a consultative opinion. *See id*. Plaintiff's arguments are without merit.

With respect to Plaintiff argument that Dr. Baskin's opinion was stale, "a medical opinion is not necessarily stale simply based on its age." *Dronckowski v. Comm'r of Soc. Sec.*, No. 1:18-CV-0027 (WBC), 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018)). The record in this case reflects that the ALJ properly based her analysis of Plaintiff's RFC on an evaluation of the entire record and did not rely solely on Dr. Baskin's opinion. First, in discussing Plaintiff's testimony from the September 2017 hearing, the ALJ noted that Plaintiff testified her mental health was about the same as in 2010. Tr. 516, 551. Plaintiff also testified that her mental impairments were helped by medication, and she reported an extensive list of activities she had been able to do since 2010, including getting a pit bull, going to parent-teacher conferences, watching softball games, and attending art fairs and graduation ceremonies. Tr. 550-51, 556-57, 558-59.

Plaintiff's testimony is also consistent with other evidence from the time of Dr. Baskin's evaluation, and thereafter. For example, in 2010, Plaintiff admitted she could complete chores and perform childcare (Tr. 358, 519, 520, 1038) and also reported that her medication was helpful for her mental impairments (Tr. 317, 804, 823, 830, 1030). In addition, Plaintiff's treating family physician, Joshua M. Usen, D.O. ("Dr. Usen"), observed in July 2016 that Plaintiff was feeling

well and had only minor complaints. Tr. 787. Similarly, as noted by the ALJ, Dr. Usen reported in April 2017 that Plaintiff had been stable on her psychotropic medication for a long time. Tr. 524, 784. This evidence is consistent with Plaintiff's testimony regarding her daily activities and improvement with medication and establishes that Dr. Baskin's opinion had not become stale by the time of the ALJ's decision.

Plaintiff also argues that her 2012 inpatient psychiatric treatment is evidence that Dr. Baskin's opinion had become stale. *See* ECF No. 9-1 at 14. However, Plaintiff's inpatient treatment notes show that she responded to adjustments in her medication. Tr. 744. This evidence was considered by the ALJ in evaluating Dr. Baskin's opinion (Tr. 526) and is also consistent with Plaintiff's September 2017 hearing testimony referenced above. Thus, the fact that Plaintiff had inpatient psychiatric treatment does not, by itself, make the Dr. Baskin's opinion stale. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age."). *See Camille v. Colvin*, 104 F. Supp.3d 329, 344 (2d Cir. 2105). Dr. Baskin's 2010 opinion is consistent with the later evidence discussed above and with record as a whole. Furthermore, Plaintiff does not appear to have required any further inpatient psychiatric treatment, according to the record.

Plaintiff also points to her "consistent mental health treatment at [Dale]" as evidence that Dr. Baskin's opinion had become stale. *See* ECF No. 9-1 at 14. However, the record does not support Plaintiff's claim that she was treated consistently at Dale throughout the relevant period. Although Plaintiff claims that: "[she] always went [to Dale]" and stated she went to counseling every three weeks and saw her psychiatrist every one to two months (Tr. 549), the records from Dale show that Plaintiff was seen in March 2013 and June 2013; and then not again until June 2017 and August 2017—more than four years later. Tr. 1022-30. Plaintiff ultimately conceded that

12

she "wasn't really sure on the dates" she treated at Dale. Tr. 549. Thus, the lack of consistent treatment records from Dale do not support Plaintiff's staleness claim. Based on the foregoing, the later evidence cited by Plaintiff does not reveal a significantly different picture of Plaintiff's mental functioning than assessed by Dr. Baskin, and as such, Plaintiff has not met her burden to prove she was disabled. *See* 20 C.F.R. § 416.912(a)(1) (2017).

Plaintiff next argues that the ALJ should not have afforded Dr. Baskin's opinion significant weight. *See* ECF No. 9-1 at 14. Plaintiff cites a case from the Eastern District of New York, *Fruhling v. Colvin*, No. 15-CV-4417 (BMC), 2016 WL 4097085, at *5 (E.D.N.Y. July 30, 2016) (unpublished), to support her argument. *Fruhling* is not binding on this Court. Nor is it persuasive insofar as it suggests that a physician's "programmatic expertise" is irrelevant. Although *Fruhling* correctly states that it is the responsibility of the ALJ, and not a consultative examiner, to assess a claimant's RFC and determine whether he was disabled, the analysis in that case fails to appreciate that the regulation for evaluating medical opinions at the time of Plaintiff's claim specifically instructed ALJs to consider a physician's "programmatic expertise."

In weighing a medical source opinion, "the amount of understanding of [the agency's] disability programs and their evidentiary requirements that an acceptable medical source ha[d], regardless of the source of that understanding" was a factor an ALJ should consider. 20 C.F.R. § 416.927(c)(6) (2016). The regulation also explained that "State agency medical and psychological consultants . . . [were] highly qualified physicians, psychologists, and other medical specialists who [were] also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i) (2016). As such, ALJs were required to consider consultative physician's "programmatic experience." *See id.* Accordingly, the Court declines to adopt the conclusion from *Fruhling* that

13

Plaintiff promotes to support her challenge to the ALJ's assignment of significant weight to Dr. Baskin's opinion.

In her second point of error, Plaintiff claims that the ALJ erred in assessing the physical limitations of her RFC because the ALJ rejected all such medical opinions, creating an "evidentiary gap" in the record. *See* ECF No. 9-1 at 15-16. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, it is the claimant's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack

of evidence on a matter for which the claimant bears the burden of proof); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citations omitted) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought."); *Parker v. Berryhill*, No. 17-CV-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (holding that a plaintiff bears the burden of showing her RFC is more limited than that found by the ALJ) (citations omitted).

Plaintiff alleges that due to the lack of a supporting medical opinion, the ALJ was required to develop the record with a medical opinion supporting her physical RFC. *See id.* Plaintiff is incorrect. As an initial matter, the ALJ did not "reject" the medical opinions regarding Plaintiff's physical abilities, as Plaintiff argues.  Rather, the ALJ afforded these opinions little weight (Tr. 525-26) and adopted limitations from these opinions that were consistent with the record (Tr. 515). For example, Dr. Mechtler opined in his July 2010 physical RFC questionnaire that Plaintiff could never climb and had a moderate restriction to dust, fumes, and gases. Tr. 369. Similarly, Dr. Saikali opined in his May 2011 headache questionnaire that Plaintiff had headaches triggered by weather changes and noise and that her headaches were made worse by noise and bright lights. Tr. 491. In assessing Plaintiff's RFC, the ALJ found that she needed to avoid concentrated exposure to extreme weather, *i.e.*, extreme heat, extreme cold, wetness, and humidity. Tr. 515. The ALJ also found that Plaintiff could never climb ladders, ropes, or scaffolds, needed to avoid concentrated exposure to noise levels greater than moderate, and should avoid working with bright lights or flickering lights common to welding or cutting metal. *Id.*

As for the limitations from these doctors not included in Plaintiff's RFC, the ALJ explained that it was because the doctors' opinions were based on a sparse examination record, or their opined limitations were outside their scope of expertise. Tr. 525-26. *See* 20 C.F.R. § 416.927(c)(3)

(2016) (the more an opinion is supported by relevant evidence, the more weight an ALJ should afford that opinion); 20 C.F.R. § 416.927(c)(5) (2016) (an ALJ should consider a medical source's specialization in weighing that source's opinion). Additionally, both doctors indicated that Plaintiff was disabled or unable to work. Tr. 370, 493. Determinations that a claimant is disabled and unable to work are "not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner." 20 C.F.R. § 416.927(d) (2016) (opinions that a claimant was disabled or unable to work were opinions on issues reserved to the Commissioner that did not receive any special significance).

In sum, the ALJ included in Plaintiff's RFC those limitations of Drs. Mechtler's and Saikali's that were supported by the evidence of record, including: Dr. Usen's observations that Plaintiff was having balance difficulties (Tr. 524, 792, 796, 803); Plaintiff's emergency room diagnosis of syncope (albeit idiopathic syncope) (Tr. 1053); and Dr. Usen's March 2013 Department of Motor vehicles form indicating that Plaintiff's condition could affect her ability to drive (Tr. 819, 979), which the ALJ specifically noted at the September 2017 hearing (Tr. 544-45). As such, no evidentiary gap existed. *Rodriguez v. Comm'r Soc. Sec.*, No. 17-CV-6006-FPG, 2018 WL 4681624, at *7 (W.D.N.Y. Sep. 28, 2018) (unpublished) (the ALJ did not err in weighing the various medical opinions because although "the ALJ did not adopt any opinion in its entirety . . . several RFC findings were consistent with portions of each opinion"); *Hayes v. Berryhill*, No. 17-CV-6354-FPG, 2018 WL 3069116, at *7 (W.D.N.Y. June 21, 2018) (slip copy) ("the ALJ did not adopt any opinion in its entirety, however, several RFC findings were consistent with portions of each opinion").

Furthermore, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence

available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.). Thus, contrary to Plaintiff's argument, the ALJ properly considered the medical opinion evidence in this case.

In assessing Plaintiff's RFC, the ALJ also found that Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. Tr. 515. These limitations are consistent with Plaintiff's testimony that she had ambulation problems, but periodically went "upstairs" to check on her disabled mother (Tr. 525, 560), as well as consistent with Dr. Usen's mild examination findings, Dr. Miller's observations that Plaintiff could get on and off the exam table and rise from a chair without difficulty, and Plaintiff's repeatedly negative diagnostic imaging findings (Tr. 359, 362, 396, 409, 520-21, 524-25, 788, 817, 819, 827, 831, 842, 848, 849, 901, 902, 903, 904, 934, 935, 958). The ALJ's finding that Plaintiff could perform sedentary work is also supported by her normal examination and diagnostic findings. Tr. 515. See *20* C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(4) ("'Sedentary work' represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have serious functional limitations.").

Based on the foregoing, the Court finds that the ALJ properly considered the medical opinion evidence, and the ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED.** Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE